UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE ANN GREGOIRE,<br><br>       Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>       Defendant. | No. EDCV 17-900 AGR<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff filed this action on May 9, 2017. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 11, 12.) On January 2, 2018, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court affirms the decision of the Commissioner.

# I.

# PROCEDURAL BACKGROUND

Plaintiff filed an application for disability insurance benefits on August 12, 2013 and alleged an onset date of August 24, 2012. Administrative Record ("AR") 39. The application was denied initially and on reconsideration. AR 126, 141. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On March 13, 2015, the ALJ continued the hearing for submission of additional medical records. AR 57-66. On July 17, 2015, the ALJ conducted a hearing at which Plaintiff and a vocational expert ("VE") testified. AR 67-104. On August 4, 2015, the ALJ issued a decision denying benefits. AR 36-52. On March 9, 2017, the Appeals Council denied review. AR 1-6. This action followed.

# II.

# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.

# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (citation and quotation marks omitted).

## B. The ALJ's Findings

The ALJ found that Plaintiff met the insured status requirements through December 31, 2018. AR 41. Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Plaintiff had the severe impairments of fibromyalgia, lumbar disc disease, status post carpal tunnel syndrome, anxiety disorder and dysthymic disorder. AR 41.

The ALJ found that, through the date last insured, Plaintiff has the residual functional capacity ("RFC") to perform less than the full range of light work. She could lift/carry up to 20 pounds occasionally and up to 10 pounds frequently; sit for six hours in an eight-hour workday; stand/walk for six hours in an eight-hour workday with the ability to sit once per hour for up to three minutes before standing again; frequently push/pull with bilateral upper extremities; occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl;

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

and frequently perform fingering and gross manipulation with bilateral upper extremities. She could not perform repetitive work involving repeated hand flexion, extension or deviation, but could perform computer work with her forearms supported. She is limited to work in a low stress environment, and occasional, non-intense and superficial interaction with coworkers and the public. She is precluded from fast paced work. AR 43. Plaintiff cannot perform her past relevant work but there are jobs that exist in significant numbers in the national economy that she could perform such as routing clerk (light), mail clerk (light) and document preparer (sedentary).[2] AR 50-51.

### C. **Vocational Expert**

An ALJ may rely on a vocational expert's testimony in response to a hypothetical that contains all of the limitations the ALJ found credible and supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). "A VE's recognized expertise provides the necessary foundation for his or her testimony." *Id.* at 1218; *see also Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017) (quoting *Bayliss*).

Plaintiff argues that the ALJ's RFC assessment that she is limited to occasional, non-intense and superficial interaction with coworkers and the public "would eliminate her ability to sustain work activity because work is sometimes intense and sometimes not superficial." (Joint Stipulation (JS) at 6.) "Responding appropriately to supervision, co-workers and usual work situations" is a basic work activity. 20 C.F.R. § 404.1522(b)(5). "A limited ability to carry out certain mental activities, such as . . . responding appropriately to supervision, co-workers, and work pressures in a work setting, *may* reduce your ability to do past work and other work." 20 C.F.R. § 404.1545(c) (emphasis added). Plaintiff relies on the Program Operational Manual System (POMS) DI 25020.010 ¶ B.3(c), which describes the "responding appropriately"

---

[2] The vocational expert testified that a claimant could perform these representative jobs even if she needed to alternate sitting and standing every hour for a few minutes without leaving the workstation. AR 98-99.

4

work activity as including the ability to "accept instructions and respond appropriately to criticism from supervisors" and "get along with coworkers or peers without (unduly) distracting them or exhibiting behavioral extremes."  *See* https://secure/ssa.gov/poms.nsf/lnx/0425020010   The POMS is not binding on the courts but is persuasive authority.  *Buck*, 869 F.3d at 1050-51.

The ALJ made no finding that Plaintiff could not respond appropriately to supervision, coworkers or the public; could not accept instructions; could not respond appropriately to criticism from supervisors or get along with coworkers without unduly distracting them or exhibiting behavioral extremes.  Plaintiff stated in her report that she did not have problems getting along with family, friends, neighbors or others.  AR 324.  She felt she got along with authority figures for the most part.  AR 325.  Plaintiff's *ipse dixit* is insufficient.  Although Plaintiff argues it is "obvious" that, for example, the training period for each job would require more than occasional, non-intense and superficial interaction with co-workers or the public, that proposition is not at all obvious for the representative jobs.  *See Burtenshaw v. Berryhill*, 2018 U.S. Dist. LEXIS 10924, *15-*17 (C.D. Cal. Jan. 23, 2018) (concluding that limitation to occasional, superficial and non-intense interactions with coworkers and supervisors did not conflict with mental demands for unskilled work in POMS DI 25020.010 ¶ B.3); *Markell v. Berryhill*, 2017 U.S. Dist. LEXIS 203447, *26-*28 & n.5 (N.D. Cal. Dec. 11, 2017) (same).

### D. Medical Source Opinions

Plaintiff argues that the ALJ failed to consider properly the opinions of Dr. Sobol, a treating physician, and Dr. Cocchiarella, an examining physician.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  To reject an uncontradicted opinion of a medically acceptable treating source, an ALJ must state clear and convincing reasons that are supported by substantial evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing

specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn*, 495 F.3d at 632 (citations and quotation marks omitted).

An examining physician's opinion constitutes substantial evidence when, as here, it is based on independent clinical findings. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). When an examining physician's opinion is contradicted, "it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted).

"'The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.'" *Ryan v. Comm'r*, 528 F.3d 1194, 1202 (9th Cir. 2008) (citation and emphasis omitted). However, a non-examining physician's opinion may serve as substantial evidence when it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

The ALJ did not give significant weight to Dr. Sobol's opinion because "the claimant's treating physician for workers' compensation purposes serves as an advocate for the claimant,and describes excessive limitations to enhance the claimant's financial recovery." AR 48-49. Further, Dr. Sobol's opinion "is concerned with the ongoing worker's compensation claim and the ability to do prior work, and the standard for review in a worker's compensation case is not the same as Social Security disability." AR 49.

The Commissioner concedes that the ALJ erred in discounting Dr. Sobol's opinion on this basis but argues that any error is harmless. (JS at 15.) "[A]n ALJ may reject a treating source's opinion that is contradicted by another doctor's opinion only

'by providing specific and legitimate reasons that are supported by substantial evidence.'" *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (citation omitted). The ALJ is not bound by a determination under workers compensation rules that a claimant is temporarily totally disabled. 20 C.F.R. § 404.1504. On the other hand, the ALJ may not discount the physician's opinion simply because it was given in workers compensation proceedings. *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002). "[I]t is important to distinguish between those portions of the physicians' reports that represent the physicians' medical findings and those portions of the reports that represent conclusions as to the claimant's disability for purposes of worker's compensation." *Coria v. Heckler*, 750 F.2d 245, 247 (9th Cir. 1984). Because the tests for Social Security disability and workers compensation are different, "the ALJ could reasonably disregard so much of the physicians' reports as set forth their conclusions as to [the claimant's] disability for worker's compensation purposes." *Id.* "On the other hand, the physicians' findings, *qua* findings, do not necessarily suffer from similar defects." *Id.* at 248. "[T]he ALJ should evaluate the objective medical findings set forth in the medical reports for submission with the worker's compensation claim by the same standards that s/he uses to evaluate medical findings in reports made in the first instance for the Social Security claim, unless there is some reasonable basis to believe a particular report or finding is not entitled to comparable weight." *Id.* The ALJ did not do so and therefore erred.

Harmless error applies to the ALJ's improper consideration of a treating physician's opinion. *See Marsh*, 792 F.3d at 1173. When "'circumstances of the case show a substantial likelihood of prejudice, remand is appropriate so that the agency can decide whether re-consideration is necessary. By contrast, whe[n] harmlessness is clear and not a borderline question, remand for reconsideration is not appropriate." *Id.* (quoting *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011)). Further, when "the magnitude of an ALJ error is more significant, then the degree of certainty of harmlessness must also be heightened before an error can be determined to be

7

harmless." *Id.*; *see, e.g., Ava v. Berryhill*, 2017 U.S. App. LEXIS 21061, *2-*3 (9th Cir. Oct. 24, 2017) (remanding when substantial evidence could support a finding of disability or nondisability).

In his assessment dated February 23, 2015, Dr. Sobol opined that Gregoire could occasionally lift/carry up to 20 pounds; sit for five hours, stand for two hours and walk for one hour in an eight-hour workday; occasionally reach, handle, finger and push/pull with both hands; frequently operate foot controls with both feet; occasionally climb stairs and ramps, stoop, kneel, crouch and crawl; continuously operate a motor vehicle; and occasionally be exposed to humidity, extreme cold, extreme heat and vibrations. She could tolerate office noise and sort, handle and use paper/files. Gregoire was precluded from balancing; climbing ladders or scaffolds; and exposure to unprotected heights and moving mechanical parts. AR 618-19, 621-22, 624, 626.

The ALJ's RFC assessment differed from Dr. Sobol's opinion in that the ALJ found Gregoire could frequently, as opposed to occasionally, perform fingering. Less clear is whether the ALJ's finding that Gregoire could frequently perform gross manipulation conflicts with Dr. Sobol's opinion. AR 43. Although Dr. Sobol opined that Gregoire could occasionally handle, Dr. Sobol also opined that Gregoire could sort, handle and use paper/files. AR 619, 626. Gregoire further argues that she has below average finger dexterity. On the other hand, she reported that she plays the flute and, in 2013, began playing the guitar. AR 323-24. The term "occasionally" means up to one-third of an eight-hour workday, whereas the term "frequently" means from one-third to two-thirds of an eight-hour workday. Social Security Ruling 83-10, 1983 SSR LEXIS 30, *13-*14 (Jan. 1, 1983).

The ALJ gave significant weight to Dr. Cocchiarella's opinion and found that "her manipulative limitations are consistent with the evidence as a whole." AR 49. Dr. Cocchiarella opined that Gregoire was precluded from "repetitive work involving repeated hand flexion, extension or deviation. Any computer work should be done with her forearms supported." AR 739.

8

The ALJ incorporated Dr. Cocchiarella's limitations in the RFC. AR 43. At the hearing, the ALJ defined the terms hand flexion, extension and deviation for the vocational expert. AR 92-93. The ALJ further defined the term "repetitive work" as "repeated, in other words, over, and over, and over, and over again, constant hand flexion, extension, or deviation. They could do computer work with their forearms supported." AR 97. The ALJ expressly asked the vocational expert if the representative jobs "require greater use of the upper extremities than I described in the residual functional capacity." The vocational expert responded "no." AR 98. The ALJ inquired whether the vocational expert's testimony was consistent with the Dictionary of Occupation Titles ("DOT"). The vocational expert responded that the testimony was consistent with the DOT and the selected characteristics. AR 99.

Gregoire argues that a preclusion from repetitive work in the workers compensation context means a 50% loss of pre-injury capacity. Therefore, Gregoire contends, the ALJ erred in interpreting Dr. Cocchiarella's opinion because a preclusion from repetitive work should be interpreted as less than 50% of the workday, which would fall within the term "occasionally" and be consistent with Dr. Sobol's opinion.

Gregoire has not cited, and this court has not located, legal authority to support the proposition that the ALJ's interpretation of Dr. Cocchiarella's opinion was erroneous. In a footnote in an unpublished opinion, the Ninth Circuit noted that "'repetitively' in this context appear to refer to a *qualitative* characteristic – i.e., *how* one uses his hands, or *what type* of motion is required – whereas 'constantly' and "frequently" seem to describe a *quantitative* characteristic – i.e., *how often* one uses his hands in a certain manner." *Gardner v. Astrue*, 257 Fed. Appx. 28, 30 n.5 (9th Cir. 2007); *Sanchez v. Berryhill*, 2017 U.S. Dist. LEXIS 190093, *16 (C.D. Cal. Nov. 16, 2017); *see also LeFevers v. Comm'r*, 476 Fed. app. 608, 611 (6th Cir. 2012) ("In ordinary nomenclature, a prohibition on 'repetitive' lifting does not preclude a capacity for 'frequent' lifting, as the district court held. No reversible inconsistency exists."); *Gallegos v. Barnhart*, 99 Fed. Appx. 222, 224 (10th Cir. 2004) (concluding ALJ's finding that claimant could perform frequent

reaching, handling or fingering was not inconsistent with finding that claimant is precluded from repetitive actions).

On this record, the ALJ's error in discounting Dr. Sobol's opinion was clearly harmless and not a borderline question. *Marsh*, 792 F.3d at 1173. The ALJ clearly adopted Dr. Cocchiarella's opinion as to manipulative limitations and cited other medical evidence that contained a preclusion from repetitive activities or supported a limitation to frequent gross manipulation. AR 46, 49.

### E. **Credibility**

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that Gregoire's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. AR 45.

Second, when an ALJ concludes that a claimant is not malingering and has satisfied the first step, "the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted); *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (citation omitted). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Id.* (citation omitted).

The ALJ determined that Gregoire's statements were "less than fully credible" and her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." AR 44-45. The ALJ relied primarily on three reasons: (1) objective medical evidence did not support the alleged degree of disability; (2) her inconsistent statements; and (3) inconsistency with activities of caring for a small child. AR 44-50.

The ALJ's reasons are supported by substantial evidence. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Whereas Gregoire complains that her carpal tunnel syndrome causes pain even when holding a steering wheel (AR 319), Dr. Sobol opined that she could "continuously" operate a motor vehicle, defined as over 2/3 of a workday (AR 624). Whereas Gregoire testified that she can stand or walk only 30 minutes before having to sit down (AR 87), Dr. Sobol opined that she could sit up to two hours, stand up to one hour and walk up to one hour without interruption (AR 619). Whereas Gregoire stated she could not lift anything over 10 pounds (AR 320), Dr. Sobol opined that she could lift/carry up to 20 pounds occasionally, defined as up to one third of a workday (AR 618).[3]

The ALJ also identified inconsistencies in Gregoire's statements. Gregoire initially testified that her medication did not help with anxiety. AR 75. She later testified that she is takes Klonopin 1 mg when her panic attacks are more severe. The medication does relieve the symptoms and make them less prominent. AR 82-83. The ALJ also found that Gregoire's testimony that Klonopin makes her drowsy (AR 82) was inconsistent with the absence of any report of side effects to her physicians. AR 45. Gregoire does not dispute these inconsistencies, but argues that they are minor. These

---

[3] At the hearing, Gregoire's attorney and the ALJ agreed that her physical limitations translated into some range of light work. AR 72.

11

inconsistencies go to the question of whether Gregoire's symptoms can be controlled by medication, which is material to the determination of disability. *See Warre v. Comm'r*, 439 F.3d 1006 (9th Cir. 2006). The ALJ did not err in relying on her inconsistencies.

The ALJ also relied on Gregoire's ability to take care of her three-year old child while living alone. AR 44. Gregoire testified that she had no problems taking care of her daughter while living alone with her, and continued to play with her even during a panic attack. AR 74-75, 83-84. The ALJ acknowledged Gregoire's testimony that she took her child to her parents two to three times per week for 4-6 hours. AR 44, 74. Nevertheless, the ALJ concluded that taking care of a three-year-old alone during the remaining time would be physically and emotionally demanding. AR 44. The ALJ did not err in relying on this reason.[4]

IV.

ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

DATED: February 27, 2018

ALICIA G. ROSENBERG
United States Magistrate Judge

---

[4] Gregoire testified that her panic attacks stemmed, to some extent, from not having an income, losing the only job she knew how to do, and having to pay bills without sufficient money (although her parents do pay the mortgage). AR 76, 85, 87. While Gregoire's situation is certainly understandable, the social security laws do not provide an award of benefits on this basis alone. *See Warre*, 439 F.3d at 1006-07.